# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARC DILEO** | **CIVIL ACTION** |
| **VERSUS** | |
| **GERALD LANE, ET AL.** | **NO.: 12-00522-BAJ-SCR** |

## RULING AND ORDER

Before the Court is **Defendants Gerry Lane Enterprises, Inc. and the Succession of Gerald R. Lane's Motion for Summary Judgment (Doc. 56)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Marc DiLeo's ("DiLeo") claims. DiLeo opposes the motion. (Doc. 63.) Defendants filed a reply memorandum. (Doc. 74.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED**.

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 47.)

## I. Background

### A. DiLeo's First Amended Complaint[2]

DiLeo filed this employment discrimination lawsuit pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3] DiLeo alleges that Defendants discriminated against him on the basis of his national origin, race, and sex and constructively discharged him from his sales associate position at Gerry Lane Chevrolet in Baton Rouge, Louisiana. Specifically, DiLeo alleges that dealership owner, Gerald R. Lane, created a hostile work environment in which DiLeo was subjected to racial and ethnic slurs. DiLeo's Complaint also alleges that Gerald R. Lane's actions amounted to intentional infliction of emotional distress. DiLeo further alleges a claim for assault and battery, pursuant to La. Civ.Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[2] DiLeo originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc. (Doc. 1.) Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint. (Doc. 4.) Accordingly, DiLeo filed his First Amended Complaint on September 11, 2012. (Doc. 6.)

[3] A previous ruling by this Court indicated that DiLeo also asserted a claim under 42 U.S.C. § 1981. (Doc. 94, p. 1.) However, a review of DiLeo's complaint reveals that he seeks damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981.

**B. Undisputed Facts**[4]

- Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 passing, Gerald R. Lane owned a majority interest in Gerry Lane Enterprises.

- Since 2008, Cedric Patton (African-American) has been responsible for the operations of Gerry Lane Chevrolet.

- During DiLeo's employment, Reynold Ankeny (Caucasian) served as a Sales Manager, reporting directly to Patton.

- Sales Managers Ken Balthrop (African-American), Chad Bell (Caucasian) and Cecil Overstreet (African-American) reported to Ankeny and directly supervised the sales force.

- The sales force typically comprises anywhere between twenty and thirty individuals.

- DiLeo's father is Italian-American.

- DiLeo's mother is part German and part Native American.

- DiLeo has never been to Italy, does not belong to any Italian-American organizations and has never met a family member who was from Italy.

- DiLeo worked for Gerry Lane Chevrolet for approximately three weeks as a salesman in late summer 2011.

- According to DiLeo, Gerry Lane Chevrolet sales manager Balthrop contacted him in September 2011 and recruited him to come to Gerry Lane Chevrolet to sell cars.

- Balthrop offered employment to DiLeo without any other interviews for the position.

---

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 56-1); L.R. 56.1. In opposition, DiLeo submitted a response to Defendants' statement of undisputed material facts. (Doc. 63-1); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

3

- At the time, DiLeo had been out of work for approximately seven (7) months.

- Sales representatives at Gerry Lane Enterprises must attend daily sales meetings.

- According to DiLeo, managers would sometimes yell in these meetings.

- On one occasion, a manager yelled at DiLeo for being late.

- Gerald R. Lane also spoke at the sales meetings attended by DiLeo.

- In a sales meeting, Gerald R. Lane allegedly talked for a few minutes and then, without any segue, interjected that: "and if y'all think I am a racist, well, you're damn right. I've earned the right to be."

- DiLeo also asserted that he heard Gerald R. Lane tell employees on a few occasions not to congregate together on the job, because "if he wanted to see the goddamn ghetto," he would look at the neighborhood abutting the dealership [Mall City].

- He directed this comment to both Caucasian and African-American employees alike.

- When DiLeo replied "no," in response to Gerald R. Lane's inquiry regarding whether DiLeo sold any vehicle, Gerald R. Lane allegedly told him "a runaway slave could sell more cars than you, boy."

### C. Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing DiLeo's claims. Defendants argue that DiLeo cannot point to sufficient evidence to establish his discrimination claims on the basis of his sex, national origin, or race. Defendants further contend that DiLeo cannot point to sufficient evidence to establish his constructive discharge, intentional infliction of emotional distress, assault and battery, or unpaid wages claims. Accordingly, Defendants argue that summary judgment is warranted.

4

DiLeo concedes that he cannot point to sufficient evidence to establish his sexual harassment, assault and battery, and unpaid wages claims. He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, DiLeo contends that there are genuine disputes of material fact related to his national origin and race discrimination claims, as well as his constructive discharge and intentional infliction of emotional distress claims.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule

5

56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III. Analysis

As an initial matter, as noted above, DiLeo concedes that he cannot point to sufficient evidence to establish his sexual harassment, assault and battery, and unpaid wages claims. Accordingly, Defendants' request that the Court dismiss DiLeo's hostile work environment claim on the basis of his sex, assault and battery claims, and unpaid wages claim is **GRANTED**.

## A. DiLeo's Federal and State Law Discrimination Claims Against Individual Supervisors or Fellow Employees

In support of the motion, Defendants contend that DiLeo is precluded from asserting federal or state law discrimination claims against individual supervisors. Rather, relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer. DiLeo failed to present any argument, or point to any evidence, in opposition to Defendants' argument.

It is well established that relief under Title VII is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012) (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003)). It is also well established that "[L]ouisiana's antidiscrimination law provides no cause of action against individual employees, only against employers." *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *Johnson v. Acosta,* No. 10-1756, 2010 U.S. Dist. LEXIS 109032, at *15 (E.D. La. Oct. 12, 2010) ("It is equally well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.'"); *see also* La. R.S. 23:303(A). Accordingly, Defendants' request that the Court dismiss DiLeo's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee, is **GRANTED**.

**B. DiLeo's Hostile Work Environment Claim on the Basis of His National Origin**[5]

In order to survive summary judgment, DiLeo must present sufficient evidence to establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[6] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). Here, Defendants contend that DiLeo cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and

---

[5] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964."). Accordingly, DiLeo's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

[6] However, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris*, 510 U.S. at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In opposition to the motion, DiLeo points to his deposition, in which he testified about Gerald R. Lane's use of the ethnic slur "dago." According to DiLeo, Gerald R. Lane referred to him as "dago" "at least four times." (Doc. 63-4, p. 16.) However, a review of DiLeo's deposition reveals that he only identified four occasions during which Gerald R. Lane uttered the word. (Doc. 63-4, pp. 16, 18-19, 21.) According to DiLeo, Gerald R. Lane also referred to his coworker, Eric Angeletti, as "dago" in his presence. (Doc. 63-4, pp. 21-22.) However, a review of DiLeo's deposition reveals that he only identified one occasion during which Gerald R. Lane referred to Angeletti as "dago." (Doc. 63-4, pp. 21-23.)

DiLeo failed to present evidence that Gerald R. Lane's use of the ethnic slur occurred frequently or was physically threatening or humiliating. Further, DiLeo failed to cite, nor has the Court identified, binding case law to support the conclusion that Gerald R. Lane's use of the word "dago" on four or five occasions over the course

9

of twenty-one days was sufficiently severe. Accordingly, each of the factors in the totality of the circumstances test weigh against a finding that the harassment complained of was objectively offensive.

To be sure, Gerald R. Lane's use of the ethnic slur "dago" is repulsive. However, Gerald R. Lane's use of the word on four or five occasions "pale[s] in comparison, both in severity and frequency" to the kinds of verbal harassment that the Fifth Circuit has held to support a Title VII hostile work environment claim. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *compare Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000) (holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"), *with Johnson v. TCB Constr. Co.*, 334 F. Appx. 666, 671 (5th Cir. 2009) (finding insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn nigger" was isolated; there was no evidence of the objective effect of that comment on the plaintiff's work performance; and although there was evidence that the supervisor frequently used the term "nigger," those other comments were not uttered in the plaintiff's presence and there was no evidence that they affected the plaintiff's job).

Further, DiLeo has failed to offer sufficient evidence concerning the objective effect of the harassment complained of on his "work performance." *Harris*, 510 U.S. at 23.

> Even when a hostile environment is shown, a plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment. Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career. Title VII is intended only to prohibit and prevent conduct "that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."

*Sparks v. Alrod Enters.*, No. 3:00-CV-2110-L, 2003 U.S. Dist. LEXIS 7095, at *17 (N.D. Tex. Apr. 28, 2003) (citing cases).

As such, the Court finds that DiLeo has failed to present sufficient evidence to create a dispute of material fact as to whether the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Indeed, DiLeo failed to cite, nor has the Court identified, any binding case law that requires a different conclusion. Accordingly, Defendants' request that the Court dismiss DiLeo's hostile work environment claim on the basis of his national origin is **GRANTED**.

### C. DiLeo's Hostile Work Environment Claim on the Basis of His Race

In order to survive summary judgment, DiLeo must present sufficient evidence to establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt

remedial action.[7] *Ramsey*, 286 F.3d at 268 (citations omitted). In support of the motion, Defendants argue that DiLeo cannot establish that the harassment complained of was based on his race. Defendants further contend that DiLeo cannot establish that the harassment complained of was severe and pervasive enough to affect a term, condition, or privilege of his employment.

In opposition, DiLeo argues that Italian-American is a race, and that discrimination against Italian-Americans is actionable as a race claim under 42 U.S.C. § 1981. However, a review of DiLeo's First Amended Complaint reveals that he failed to allege a claim under 42 U.S.C. § 1981. (Doc. 6.) Further, DiLeo failed to cite, nor has the Court identified, any binding case law to support the proposition that Italian-Americans are considered a protected class under Title VII. Thus, DiLeo's argument is unavailing.

Even assuming, *arguendo*, discrimination against Italian-Americans is actionable as a race claim under Title VII, DiLeo has failed to present sufficient evidence to create a dispute of material fact as to whether the harassment complained of affected a term, condition, or privilege of his employment. In opposition to the motion, DiLeo points to his deposition testimony, in which he testified that Gerald R. Lane referred to him as "dago" "at least four times" (Doc. 63-4, pp. 16, 18-19, 21); testified about a sales meeting during which Gerald R. Lane said, "And if y'all think I'm a racist, well, you're damn right I am. I've earned the right to be." (Doc. 63-4, p.

---

[7] As noted above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

34); testified about one occasion during which Gerald R. Lane told him that "A runaway slave could sell more cars that you, boy." (Doc. 63-4, p. 29); and testified about a sales meeting, during which Gerald R. Lane addressed sales employees as "worthless motherfuckers" (Doc. 63-4, p. 30).

DiLeo failed to cite, nor has the Court identified, binding case law to support the conclusion that Gerald R. Lane's use of the words "runaway slave" or "worthless motherfuckers" constitutes discrimination against DiLeo on the basis of his race (Italian-American). Thus, DiLeo's claim is limited to Gerald R. Lane's use of the ethnic slur "dago."

DiLeo failed to present any evidence that Gerald R. Lane's use of the ethnic slur "dago" occurred frequently, was physically threatening or humiliating, or that it interfered with his work performance. Additionally, DiLeo failed to cite, nor has the Court identified, binding case law to support the conclusion that Gerald R. Lane's use of the of the ethnic slur on four or five occasions over twenty-one days, was sufficiently severe. Accordingly, each of the factors in the totality of the circumstances test weigh against a finding that the harassment complained of was objectively offensive.

As noted above, Gerald R. Lane's use of the ethnic slur "dago" is repulsive. However, under Fifth Circuit law, Gerald R. Lane's use of the word on four or five occasions, without more, is insufficient. Accordingly, the Court finds that DiLeo has failed to present sufficient evidence to create a dispute of material fact as to whether the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Accordingly, Defendants' request that the

Court dismiss DiLeo's hostile work environment claim on the basis of his race is **GRANTED**.

### D. DiLeo's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, DiLeo must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453).

In support of the motion, Defendants argue that each of the factors weighs against DiLeo's claim that he was constructively discharged. Defendants further contend that evidence of badgering, harassment, or humiliation, without more, is

14

insufficient to establish a constructive discharge claim.

In an attempt to circumvent Rule 7.5 of the Local Rules of the United States District Court for the Middle District of Louisiana, DiLeo seeks to incorporate his motion for partial summary judgment and memorandum in support thereof into his memorandum in opposition to the instant motion. (Doc. 60; Doc. 63-3, p. 12.) While DiLeo may point any evidence in the record, his attempt to incorporate arguments from previously filed motions or memoranda, and thereby exceed the page limitations set out in the Local Rules, and shall not be permitted. Accordingly, the Court shall limit its analysis to the arguments and evidence presented in DiLeo's memorandum in opposition to the instant motion.

To survive summary judgment, DiLeo must present evidence of working conditions even more egregious than those required to establish a hostile working environment. *Hypolite*, 493 Fed. Appx. at 607-608. As concluded above, DiLeo has not presented sufficient evidence of working conditions so egregious as to constitute a hostile working environment. Further, based on the evidence presented, the only factor DiLeo can rely on to meet the reasonable employee test is "badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* However, DiLeo has failed to point to sufficient evidence to establish that Gerald R. Lane's conduct was calculated to encourage his resignation, or that it was so intolerable that a reasonable employee would feel compelled to resign. Indeed, DiLeo has failed to cite to any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss DiLeo's

constructive discharge claim is **GRANTED**.

**E.    DiLeo's Intentional Infliction of Emotional Distress Claim**

In Louisiana, to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that DiLeo cannot point to sufficient evidence to establish his claim.

In opposition, DiLeo failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, DiLeo points to his deposition, in which he testified as follows:

> Q:    Other than the situations you described at the beginning of the deposition where you had some customers that were not able to qualify for financing, [are] there any other reasons that you're aware of why you did not sell any vehicles during your three weeks there?
>
> A:    No other reason. I mean, obviously it was - it was - it was difficult in the mental aspect because you're thinking all the time this guy keeps on - Gerry Lane keeps on telling me all this stuff, but as far as customers, the actual customers, no.
>
> Q:    When you say actual customers and you say no, what do you - what do you mean?
>
> A:    Well, what I mean is, the customers, you can't get approved for a loan, then you, you know. But yeah, he definitely - it - it affects you. You know, it does affect you mentally when you got people talking to you crazy, you know, calling you ethnic slurs and degrading you, and yeah, it, it does - it does make the job - because

>     its -
>
>     It's not really a physical[ly] taxing job. You know, you're not shoveling dirt. It's more of mental. You know, you have to be mentally focused to be able to help the customer and listen to his need and wants and be able to, you know, make sure you're putting your customer [i]n the car that they're looking for.
>
> . . .
>
> Q:    All right. Have you experienced any physical problems, actual physical problems, that you believe were caused by either your employment with Gerry Lane or any of the things that went on at Gerry Lane?
>
> A:    Physical problems, no.
>
> Q;    Okay. Have you - Have you suffered any mental problems that you believe were either caused by or made worse by working at Gerry Lane Chevrolet?
>
> A:    Yes.
>
> Q:    What mental problems have you experienced?
>
> A:    Well, mental problems, basically just the, you know, having to - it's a big deal. You know, . . .

(Doc. 63-4, pp. 32-33, 37) (incomplete sentence in original). DiLeo failed to point to any other evidence to support his claim.

Even assuming, *arguendo*, that the evidence in the record establishes that Gerald R. Lane's conduct was extreme and outrageous, DiLeo has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Gerald R. Lane desired to inflict severe emotional distress upon DiLeo or knew that severe emotional distress would be certain or substantially certain to result from his conduct

17

toward DiLeo. Accordingly, the Court finds that DiLeo has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Gerald R. Lane is liable for intentional infliction of emotional distress. Indeed, DiLeo has failed to cite to any binding case law that would require the Court to conclude otherwise. As such, Defendants' request that the Court dismiss DiLeo's intentional infliction of emotional distress claim is **GRANTED**.

IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants Gerry Lane Enterprises, Inc. and the Succession of Gerald R. Lane's Motion for Summary Judgment (Doc. 56)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Marc DiLeo's claims against Defendants Gerry Lane Enterprises, Inc. and Eric Lane are hereby **DISMISSED**, with prejudice.

Baton Rouge, Louisiana, this 23rd day of September, 2014.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA